## ACTION FOR REFORMATION OF A LEASE.

Common Pleas Court of Hamilton County.

JOSEPH LOTZ v. THE TAYLOR HOTEL CO.

Decided, September 19, 1925.

*Reformation—Of a Written Instrument may be Granted only on Convincing Evidence—Office of the Court is to Discover what the Contract was and Eliminate Errors if any have Intervened.*

1. In an action for reformation of a lease, it must be shown by evidence, clear and convincing, that the instrument as executed does not contain the actual contract of lease; and what the contract really was must also be proven by evidence equally clear and convincing.

2. Where the issue is confused by the fact that in a former action relating to the same lease reformation was sought only as to the amount of land covered, while now, with provisions in the lease against waste and for a return of the property in its original condition, the right is claimed to make changes in the building, with no security offered for condition in which the property will be surrendered, a court will decree reformation only as to those matters as to which the parties are in agreement.

*Edward A. Tepe* and *C. F. Waltz,* for plaintiff.
*Louis B. Sawyer* and *Jackson W. Sparrow,* for defendant.

DARBY, J.

The plaintiff in this case asks that the defendant be enjoined from erecting certain additional rooms upon premises belonging to the plaintiff and leased to the defendant, and that the lease be abrogated, the premises returned to the plaintiff and that other proper relief be granted.

The defendant, in an amended answer and cross-petition admits the lease, and by way of cross-petition asks for its reformation upon the ground that when the lease was signed, "it was verbally agreed and understood, by the plaintiff and defendant and its agents, that defendant should have the right to make such alterations and changes from time to time as were necessary in its judgment, to make said property an income-bearing property."

On the trial, the plaintiff proved the lease, which was in the ordinary long form, and which described the premises leased as follows:

"A certain three story brick building, known, numbered and designated as 2402 Park Avenue, Norwood, Hamilton County, Ohio, with the use of garage and lot one hundred and twenty (120) feet front, by one hundred and fifty (150) feet deep, and more fully described as follows: being Lot No. 18 and Lot No. 19, and the west twenty (20) feet off of Lot No. 110 of Norwood Park Second Subdivision of Norwood."

The lease was for five years, with privilege of five years more, and a privilege of purchase at sixteen thousand dollars. The ordinary conditions are found in the lease against waste and requiring the lessee to deliver up the premises in good order as they are or may be put by the lessor, reasonable use, and ordinary wear and tear thereof, etc., excepted.

Inserted in typewriting in the lease are the following paragraphs:

"The said lessee agrees to make all interior repairs.

"The said lessor agrees to make all exterior repairs, which is to include glass windows, and also to make any changes or alterations that shall hereafter be required by the building inspector of the city of Norwood, Ohio, as to the exterior of said building, and if the gas furnace now in said building proves unsatisfactory to lessee, upon its demand lessor will provide and install a coal furnace in said house which shall be supplementary to said gas furnace."

Plaintiff proved that the defendant made a number of changes in the building, as, by changing windows into doors; by breaking through the wall of the building on the second floor to put in a small window, in the conversion of a cupboard or closet into a kitchenette; by cutting a door between the parlors, as they were called, through the partition; by removing part of the stone foundation under a window in the cellar for the purpose of converting it into a door; and also the partial enclosure of the west porch by some kind of wood or metal, to make two additional rooms upon the porch. These

and other minor changes were made by the defendant, the plaintiff claiming that they were made without permission or authority, and against her will, and that they constituted waste and for these reasons she asks the injunction and cancellation of the lease.

The defendant admitted the making of the changes, but undertook to justify its course upon two distinct grounds:

First. That at the time of the making of the lease, it was verbally agreed between the defendant and plaintiff to make those changes, and any others defendant saw fit, in order to conform the building to the uses of the defendant in the operation of a private hotel, rooming house and place for light housekeeping purposes.

Second. That being in possession under a lease of this length, that it was the privilege of the defendant to make any changes it pleased in the building, no matter what they were, provided that when the lease expired (if the option to purchase were not exercised) the property was returned to the plaintiff in as good condition as it was or might be put by her, making allowance for ordinary wear and tear, etc.

While no reply or answer to the cross-petition of the defendant has been filed, the plaintiff denies the alleged verbal agreement with the defendant except in one particular, and that is, she admitted that before the making of the lease there was an agreement that a door might be opened out from the east porch for ingress and egress to and from the porch.

Taking up the cross-petition and the prayer for reformation of the lease, we must start out with a correct understanding as to the nature of the remedy sought, and the circumstances under which it will be granted.

In *Stewart* v. *Gordon,* 60 O. S., 170, which was an action for reformation of an instrument, in discussing the equitable doctrine of reformation the court on page 176 makes use of the very pertinent quotation from Bispham on Equity, as follows:

"A person who seeks to rectify a deed on the ground of mistake must establish in the clearest and most satisfactory manner that the alleged intention to which he desires it to

be made conformable, continued concurrently in the minds of all parties down to the time of its execution, and also must be able to show exactly and precisely the form to which the deed ought to be brought.''

He further adds that,

''To reform a contract and enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission; hence, in order to justify a decree for reformation in case of pure mistake, it is necessary that the mistake should have been mutual.''

On the same page, the Supreme Court say:

''It is not competent for a court to determine the contract that should have been made, and decree its performance. Parties must be left to make their own contracts. The most the court can do in exercising the power of reformation is to clearly ascertain what the contract was, and to correct such mutual errors as have intervened in carrying it into execution.''

In *Neininger* v. *State*, 50 O. S., 394, the court had before it the matter of the reformation of a recognizance, and after examining many authorities sustaining the right to reform instruments in general, used the following language on page 403:

''But the evidence must be of that clear and convincing character which leaves no reasonable doubt either of the mis take or the terms of the agreement.''

Under the rules as above stated, the defendant has the burden of proving by clear and convincing evidence that the lease as executed did not contain the actual contract of lease, and cf proving by such clear and convincing evidence what the actual agreement was.

So far as the evidence is concerned, there is a sharp conflict between the parties as to the agreement claimed by the defendant. It offered certain evidence in support of a rather broad understanding between the parties, but this alleged

agreement is as strongly denied by the plaintiff as it is affirmed by the defendant and his witnesses.  As stated, the plaintiff admits that she consented before the signing of the lease, to the changing of a window into a door, but denied all other claims of changes.  It is conceded by the defendant that there was no agreement to change the basement by making the window into a door, though it claims there was some discussion with plaintiff as to putting a restaurant in the basement.

Defendant claims not only that there was an agreement as to changes which were afterwards made, but that at the time and before the making of the lease, it was understood and agreed by the parties that the land contained within the lease described as one hundred and twenty (120) feet, actually included a driveway east of the garage, which would take in eight or ten feet additional land.  As to the garage, it will be observed that the lease provides that the lessee shall have the use of the garage.  There was a conflict as to whether the drive to be used was an old drive which came in from the west and went around three sides of the garage and into the south side, or as to whether the defendant was to come into the garage directly from Park avenue on the south.  The garage stood wholly on property of the plaintiff, but extended beyond the one hundred and twenty feet specified.

It seems that the lease was examined by counsel for the defendant before its execution, and some changes written in by him.  There does not appear to have been a survey of the premises made until after the defendant went into possession and disputes began to arise.

A suit was filed by the hotel company, being cause No. 188697, asking a reformation of this same lease by including the driveway above referred to, in the land leased.  That action has been consolidated with the present one, and will be disposed of with it.

While in a proper case the court should reform a lease to include land actually intended by the parties to be so included, the court may not do so on conflicting evidence, which cannot be said to be clear and convincing.  A mere conflict will not

necessarily prevent evidence from being clear and convincing, but when all the evidence in the case leaves the mind of the court in that state that it is not clearly convinced of the right of reformation of an instrument, reformation may not be decreed. To include within the land leased (and which would therefore be within that land subject to purchase at a fixed price) ten feet additional may only be done on a very clearly established case.

There are two points in the case very strongly telling against the defendant's claim with relation to the alleged contract to make any and all changes in the property it saw fit. In the first place, when the hotel company brought its suit to reform this lease, it sought to reform it only as to the amount of land involved, and there was not a suggestion that the lease did not fully express the real contract between the parties in all other respects. It would seem quite natural that in an action to reform a contract, the parties would seek reformation as to all matters as to which it claims mutual mistake. Had a judgment been entered in that case reforming the contract, or denying reformation, it would have been a final and complete bar to any further act on for reformation. It is a matter of considerable interest that, claiming that the lease did not express the actual contract between the parties, there was left out of the action this most important matter under the claim of a right to alter the building at will. One would expect that when the controversy arose, the whole claim would be presented. The failure to do so gives rise to speculation, if not suspicion.

The second matter which has challenged the court's attention as to the defendant's claim of a contract to make these changes, is to be found in the testimony of Mr. Graves, in which he stated that when the court was at the premises he concealed certain changes which were made, justifying himself on the ground that he was not showing the property, but that the plaintiff was.

On the whole, the court is of the opinion that the defendant has not shown a contract such as it claims, by clear and con-

vincing evidence, either as to the land contained within the lease or as to the general right to make changes and alterations in the building, but inasmuch as the plaintiff has admitted her agreement to change a window into a door on the east side of the building, she may not complain of the defendant having done so.

The second contention of the defendant, under which it claims the right to make these changes regardless of the claim for reformation, is that inasmuch as it was bound to return the property in as good condition as when possession was taken, excepting for ordinary wear and tear, it had the right to make any change or alteration of the property it desired in the meantime.

No authority has been submitted to the court supporting the claim of the defendant upon this point, and it would seem anomalous that under the terms of this lease, with provisions for repairs and against waste, that the right of possession gave the lessee the right to substantially change the character of the building, even to the extent of practical destruction, provided only that at the time the lease expired the property might be returned to its original condition. A lease is matter of contract, and those things only may be done under a contract which are expressed, or which arise from necessary implication, or which arise as matter of law. It seems not to have been within the contemplation of the plaintiff under the terms of this lease, alone, that the defendant had the right to make material and substantial changes in the building, resting only upon an expectation of restoration, though there might be no ability, financially or otherwise, to do so. It would seem that in such case security would have been exacted, between strangers.

The testimony in the case is in hopeless conflict on almost every point. The plaintiff had a building to let, and the defendant was anxious for its possession and occupancy. From the statements of the plaintiff, there must have been a discussion before the lease, as to the cutting of the door on the east side of the building. From all the evidence, it also appears

that certainly, after the defendant went into possession, there was some discussion as to other changes, and changes were made. It is also clear that some changes were made without discussion, without any suggestion of authority; also that with knowledge of the changes plaintiff accepted the rents, though complaining.

The plaintiff is asking that the lease be abrogated. The defendant is asking that the lease be reformed and enforced as reformed. As this is an action in equity, and as both parties are seeking equity, the rule must be applied, that he who seeks equity must do equity. The court cannot sustain the right of defendant to materially change and mar a building by a lessee in possession under such a lease as this, on the mere covenant to restore the premises in good condition.

Forfeitures are not favored, and under all the circumstances of the case, a,nd the conflict of evidence, the court does not decree forfeiture. Parties may waive rights, and if there might have been ground of forfeiture, the plaintiff by her actions has waived the same.

It is the judgment of the court:

That the cross-petition of the defendant be dismissed.

That the prayer of the petition to enjoin defendant from erecting the rooms on the west side of the porch be granted, and that a mandatory injunction issue requiring the defendant to remove so much of the same as has been erected and that the defendant be enjoined from making any other or further changes or alterations in said building; and that the defendant pay the costs of this action.

That cause No. 188697, *The Taylor Hotel Company* v. *Lotz* be dismissed at plaintiff's costs.